UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARCEAU DOZE-GUILLORY, | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-24-CV-1309-FB (HJB) |
| | § | |
| DOUGLAS A. COLLINS, SECRETARY, | § | |
| DEPARTMENT OF VETERANS AFFAIRS, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion to Dismiss (Docket Entry 15). Pretrial matters have been referred to the undersigned for consideration. (*See* Docket Entry 6.) For the reasons set out below, I recommend that Defendant's motion (Docket Entry 15) be **GRANTED**, and that Plaintiff's Amended Complaint (Docket Entry 14) be **DISMISSED WITH PREJUDICE IN PART** and **DISMISSED WITHOUT PREJUDICE IN PART**.

I.      **Jurisdiction.**

Plaintiff brings claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331. The undersigned has authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

II.    **Background.**[1]

Plaintiff is a black registered nurse ("RN"), specializing in infection prevention, at the United States Department of Veteran Affairs' (the "VA") at the South Texas Veterans Health Care System in San Antonio, Texas. (Docket Entry 14, at 2–3.) She began working there in 2017. (*Id.* at 3.) From 2017 to 2020, Plaintiff received "Outstanding" or "Highly Satisfactory" ratings on her annual proficiency reports. (*Id.*) Things changed in October 2020, when Christine Sulicki, a white woman, became Plaintiff's first-line supervisor. (*Id.* at 3–4.) Plaintiff's claims are based on her interactions with Sulicki, Vicki Butler, a black Chief of Quality Management, two white nurses, Michael Siderline and Patrick Polk, and an employee named Delvina Ford, whose race and job are not alleged. (Docket Entry 14, at 4.)

Plaintiff's alleged instances of mistreatment in the workplace began on November 12, 2020, when Sulicki reprimanded Plaintiff for arriving 40 minutes late for a training session the previous month, even though Plaintiff had called ahead and was assured that her delayed arrival would not be a problem. (Docket Entry 14, at 4.) Plaintiff alleges that she never saw Sulicki criticize her white co-workers "in similar situations." (*Id.*) On November 17, 2020, Sulicki publicly accused Plaintiff of doing an improper "hand off" to Polk. (*Id.* at 5.)

On January 19, 2021, Sulicki communicated Plaintiff's private medical information without her permission to Dr. Jose Cadena-Zuuaga, an infectious disease specialist. (Docket Entry 14, at 5.) On January 22, 2021, a request Plaintiff had made for overtime pay was denied—though she does not allege by whom. (*Id.*) On January 28, 2021, in Sulicki's presence, Polk accused

---

[1] Because Defendant seeks dismissal at the pleadings stage, the undersigned assumes the veracity of Plaintiff's "well-pleaded factual allegations." *See Aschroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Accordingly, this background section is primarily drawn from the non-conclusory assertions in Plaintiff's amended complaint. (*See* Docket Entry 14.)

Plaintiff of using false data; Sulicki did not intervene on Plaintiff's behalf or otherwise reprimand Polk.  (*Id.*)  And at some point, during the month of January, Sulicki instructed Plaintiff's coworkers not to accept any of her phone calls.  (*Id.*)

On February 1, 2021, Plaintiff contacted her local EEO Manager/ADR Coordinator, "to obtain information about the EEO process, . . . but not . . . to begin the EEO complaint process." (Docket Entry 14, at 5; Docket Entry 17-6, at 2; Docket Entry 18, at 3–4 n.3.)  By that time, Plaintiff was the only black employee in her department.[2]

Throughout the month of February 2021, Plaintiff made several complaints to Butler that Sulicki was excluding black infection specialists—which, by that time, was only Plaintiff—from decision-making discussions but allowing white infection prevention specialists to participate. (Docket Entry 14, at 6.)  On February 3, 2021, Plaintiff also complained to Butler that Siderline had been "extremely hostile and confrontational" towards her.  (*Id.*)  On February 5, 2021, Sulicki accused Plaintiff of "prevent[ing] collaboration with the team" as a result of a "lack of interaction with staff."  (*Id.* at 5.)  Sulicki also accused Plaintiff of failing to obtain VPN authorization to be able to work remotely, when necessary.  (*Id.*)  At some point, Sulicki scheduled a mandatory meeting on February 8, 2021.  (*Id.*)  Plaintiff's union representative asked Sulicki to postpone the meeting by one hour, but she proceeded as scheduled, without the representative present.  (*Id.* at 5–6.)  That same day, Sulicki accused Plaintiff of ignoring instructions.  (*Id.* at 6.)  On February 9, 2021, Butler accused Plaintiff of failing to provide "orientation" to Siderline.  (*Id.*)  That same day, Plaintiff was reassigned to work "outside of the infection control" department for an unspecified amount of time.  (*Id.* at 10.)

---

[2] On some unspecified prior occasion, Butler had told Plaintiff and other black employees that "[w]hen you get these jobs, you should keep your heads down and do your work and pray about it."  (Docket Entry 14, at 4–5.)

By February 12, 2021, Plaintiff was experiencing "anxiety, depression, low energy[,] and insomnia." (Docket Entry 14, at 11.) Dr. Patrick C. Walsh attributed the symptoms to stress in Plaintiff's workplace. (*Id.*) On February 26, 2021, Dr. George V. Nazarewicz prescribed some unspecified medications for Plaintiff's symptoms and advised her to take three weeks off from work under the Family Medical Leave Act ("FMLA"). (*Id.* at 6, 12.) Upon her return from FMLA leave, Plaintiff was assigned "to work with Sulicki on the Covid vaccination clinic." (*Id.*) Plaintiff was permitted to perform only clerical duties at the clinic, rather than the duties of an RN. (*Id.*)

In addition to the specific incidents listed above, Plaintiff asserts that, following Sulicki's arrival as Plaintiff's first-line supervisor, Plaintiff's two annual proficiency reports were downgraded to "Satisfactory"—resulting in Plaintiff's not receiving any salary bonus for those years. (Docket Entry 14, at 3.) The "Satisfactory" rating for the 12-month period beginning April 16, 2020, and ending April 16, 2021, was made by Butler, with input from Sulicki. (*Id.*; Docket Entry 17-2.) The "Satisfactory" rating for the 12-month period beginning April 12, 2021, and ending April 15, 2022, was made by Ford, with input from Butler. (Docket Entry 14, at 3; Docket Entry 17-3.)[3]

---

[3] Plaintiff also makes numerous conclusory and general allegations throughout her complaint, including that: (1) Sulicki's "animosity to African American staff members was well known" (Docket Entry 14, at 3); (2) Sulicki was "constantly harassing and micromanaging Plaintiff" and "often sarcastically ridiculing or belittling her in the presence of others" (*id.* at 4); (3) Siderline, Polk, Butler, and Ford "constantly and in a threatening manner bullied Plaintiff" (*id.*); (4) Butler constantly failed to remediate "incivility and abusive conduct in the racially toxic atmosphere" (*id.*); (5) Sulicki watched Polk harass Plaintiff and did nothing (*id.* at 9); (6) Sulicki similarly "stood by and watched as Siderline . . . moved aggressively and in a threatening manner toward Plaintiff" (*id.* at 5); (7) Butler "failed to take reasonable corrective steps" after Plaintiff complained that Siderline "came at [her] in a physically threatening manner" (*id.* at 6); (8) Polk, Siderline, Sulicki, and Butler "made derogatory comments about Blacks" and "otherwise maligned, publicly ridiculed, shunned, and unfairly criticized her" (*id.* at 9); (9) "on many occasions," Sulicki "bullied, micromanaged[,] and prevented Plaintiff from performing duties utilizing her specialized skills" (*id.*); (10) Ford "became hostile and made false accusations against Plaintiff" (*id.* at 10); (11) Plaintiff was subjected to "bullying and unreasonable and impracticable

Plaintiff made initial contact with the EEO Counselor in the VA's Office of Resolution Management ("ORM") on June 3, 2021.  (Docket Entry 14, at 7.)  She filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 14, 2021.  (*Id.*)  Plaintiff signed "an initial settlement agreement" sometime shortly thereafter—pursuant to which Plaintiff would be assigned to a new department—but  she objected to a revised agreement proposed 10 days later, based on a new condition that she complete several mandatory reviews.  (*Id.* at 7, 14)  On September 30, 2021, Butler informed Plaintiff that she would be returned to the infection control department—with Sulicki, Polk, and Siderline—because she "filed an EEO complaint" and did "not sign[] [the] settlement agreement."  (*Id.*)  Upon her return to the department, Plaintiff "experienced anxiety, fear, nausea, and loss of appetite."  (*Id.*)  On November 3, 2021, Sulicki encouraged employee Delvina Ford to report Plaintiff for misconduct, following some sort of unexplained altercation  (*Id.* at 10.)

On August 16, 2024, the EEOC found that Plaintiff had been subjected to discrimination, retaliation, and a hostile work environment based on her race and EEO activity.  (Docket Entry14, at 12; Docket Entry 17-10, at 39.)  The agency awarded $75,000 in compensatory damages, paid her attorney fees, reimbursed her 58 hours of annual leave and 18 hours of sick leave, ordered the VA to prominently display in the workplace that it had been found liable, and ordered the individuals involved to complete remedial training.  (Docket Entry 14, at 12; Docket Entry 17-10, at 40.)

---

work demands" (*id.*); (12) "VA management" gave "false and fraudulent documents" to the Department of Labor," to "improperly influence[]" a worker compensation investigation and decision with "racially motivated malicious, fraudulent, derogatory[,] and impertinent statements about her" (*id.* at 11); and (13) that, generally, any complaints against her by fellow employees were made "falsely"  (*generally id.*).

Plaintiff filed this lawsuit shortly thereafter, on November 14, 2024.  (*See* Docket Entry 1.) In accordance with the District Court's Standing Order in civil cases (*see* Docket Entry 2), Defendant provided notice to Plaintiff of its intent to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and Plaintiff responded by amending her complaint (*see* Docket Entries 13 and 14.)  Plaintiff's First Amended Complaint alleged two causes of action under Title VII: discrimination based on race and discrimination based on prior EEOC activity.  (*See* Docket Entry 14, at 13–14.)

Defendant moved to have the claims in the amended complaint dismissed pursuant to Rule 12(b)(6).  (*See* Docket Entry 15.)  Plaintiff filed her response in opposition to the motion (*see* Docket Entry 17), accompanied by exhibits (*see* Docket Entry 17-1–10), and Defendant replied (*see* Docket Entry 18).

## III.    Applicable Legal Standard.

"A court must dismiss a complaint as a matter of law when the plaintiff fails 'to state a claim upon which relief can be granted.'"  *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024) (quoting FED. R. CIV. P. 12(b)(6)), *cert. denied*, 145 S. Ct. 1930 (2025).  "Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Sims v. Allstate Fire & Cas. Ins. Co.*, 746 F. Supp. 3d 417, 420 (W.D. Tex. 2024).  To survive dismissal, the complaint must allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at  678.

In determining whether to grant a 12(b)(6) motion to dismiss, the Court "must not go outside the pleadings."  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  Generally,

that means the Court's inquiry is "limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted).  But the Court "*may* also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (emphasis added).

In ruling on a 12(b)(6) motion, "the Court assumes the truth of well-pleaded factual allegations and reasonable inferences therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (citation modified).  The Court does not, however, assume the truth of "legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement," *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citation modified), "as such assertions do not constitute well-pleaded facts." *BJZJ, LLC v. Mt. Hawley Ins. Co.*, 593 F. Supp. 3d 461, 464 (W.D. La. 2022) (citation modified); *see Spence v. Am. Airlines, Inc.*, 718 F. Supp. 3d 612, 616 (N.D. Tex. 2024) ("To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations.") (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 282 (5th Cir. 1992)).

## IV.    Discussion.

Although Plaintiff presents two causes of action in her First Amended Complaint, her allegations appear to encompass three possible Title VII claims: (1) race-based disparate treatment; (2) retaliation as a result of her engaging in protected activity; and (3)  hostile work environment. (*See* Docket Entry 14, at 13–14.)  Defendant argues that Plaintiff failed to exhaust administrative remedies as to some of the alleged misconduct, and that she has failed to sufficiently allege any of

7

her claims. As discussed below, Plaintiff has abandoned her disparate treatment and retaliation claims in her response to Defendant's exhaustion argument. This Report and Recommendation first addresses the exhaustion and abandonment issues, and then turns to the hostile work environment claim.

### A. *Administrative Exhaustion*.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* at 379. "To begin the administrative process, a federal employee must initiate contact with the federal employer's EEO Counselor and that pertinent federal agency will investigate the charges." *Green v. McDonough*, No. SA-22-CV-423-JKP, 2022 WL 17330852, at *2 (W.D. Tex. Nov. 28, 2022). In the case of a federal employee, "[c]ontact with the EEOC must occur 'within 45 days of the date of the matter alleged to be discriminatory.'" *Alabbassi v. Whitley*, No. 21-20070, 2022 WL 101975, at *2 (5th Cir. Jan. 11, 2022) (quoting 29 C.F.R. § 1614.105(a)(1)); *Pacheco v. Mineta*, 448 F.3d 783, 786 n.2 (5th Cir. 2006) (same). "Failure to initiate timely contact means a claim is unexhausted and therefore cannot proceed in court." *Alabbassi*, 2022 WL 101975, at *2 (citing *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018)); *see Pacheco.* 448 F.3d at 791–95 n.11 (same).

Here, Plaintiff's initial contact with her agency's EEO Counselor took place on June 3, 2021; accordingly, Defendant argues that the Court must dismiss as unexhausted any claims arising "from events that [Plaintiff] alleges occurred more than 45 days prior to that date (i.e., before April 19, 2021)." (Docket Entry 15, at 8.) Plaintiff concedes that the 45-day limit would apply to disparate treatment or retaliation claims, but expressly disavows raising those claims. (*See* Docket

Entry 17, at 15.)  Instead, Plaintiff argues she raises only hostile-work-environment theories—under which her 45-day deadline to initiate the exhaustion process did not begin to run until "the day of the last bad act."  (*Id.* at 15 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims . . . occur[] over a series of days or perhaps years and . . . a single act of harassment may not be actionable on its own.")).)

Contrary to Plaintiff's response, it is far from clear that disparate treatment and retaliation claims are absent from the First Amended Complaint.  (*See* Docket Entry 14, at 13–15.)  But even assuming that those claims were presented, Plaintiff's disavowal of the claims in response to Defendant's motion to dismiss amounts to abandonment.  *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("[A] party abandons a claim by failing to defend it in response to motions to dismiss.").  Accordingly, the Court need only consider the adequacy of Plaintiff's pleadings to support a hostile work environment claim.

Defendant also argues that specific allegations in Plaintiff's complaint are unexhausted because they were not mentioned in her September 14, 2021, EEOC complaint: (1) her assignment to the COVID vaccination clinic and being limited to performing clerical duties there, and (2) her downgraded proficiency ratings and attendant loss of annual bonuses.  (Docket Entry 15, at 9–11.)  Title VII exhaustion requirements bar not only those new "theories of liability" not reasonably related to the allegations contained in an EEOC charge, but also those "allegations based on new acts of discrimination."  *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 422 (W.D. Tex. 2025) (citation omitted).  "This restriction applies even when both the alleged and omitted acts involve the same type of discrimination."  *Id.*

Defendant argues that Plaintiff's allegations about being detailed to the COVID vaccination clinic and about her proficiency ratings "are qualitatively distinct" from the lengthy

9

allegations in her EEOC complaint.  (Docket Entry 15, at 9.)  And as Defendant points out in its reply, Plaintiff does not address this argument in responding to Defendant's motion, nor does she explain how these specific allegations were exhausted before the EEOC.  (*See* Docket Entry 18, a 1–2 & n.1.)  Given Plaintiff's lack of response, the Court need not consider Plaintiff's assignment to the COVID clinic or her downgraded proficiency reports when assessing her hostile-work-environment claim.

### B.  *Hostile Work Environment.*

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers "to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"  42 U.S.C. § 2000e-2(a)(1).  "Title VII also makes it unlawful for employers to require people to work in a discriminatorily hostile or abusive environment." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432 (5th Cir. 2022) (citation modified).

Considering that Plaintiff has expressly disavowed any claim other than hostile work environment, it appears her two causes of action should be read as presenting two distinct claims: a racially hostile work environment (first cause of action) and a retaliatory hostile work environment (second cause of action).  (Docket Entry 14, at 13–14.)  However, the second claim is not a recognized theory of liability in this Circuit.  Unlike other circuits, the Fifth Circuit has never recognized a cause of action for a retaliatory hostile work environment.  *See Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020) ("This circuit has not recognized a retaliatory hostile work environment cause of action, though twelve circuits have."); *Bryan v. Chertoff*, No. EP-04-CA-258-DB, 2005 WL 2206129, at *8 (W.D. Tex. Sept. 8, 2005) (granting summary judgment for employer after failing to find "any authority" that would allow a plaintiff

10

"to bring a cause of action for hostile work environment based on reprisal for having engaged in prior protected activity"), *aff'd*, 217 F. App'x 289, 293 (5th Cir. 2007).  Accordingly, the Court need only consider whether Plaintiff has sufficiently alleged a racially hostile work environment in her amended complaint.

"[T]o state a hostile work environment claim, a plaintiff must plead facts showing that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) defendant knew or should have known about the harassment and failed to take remedial action."  *Hanna v. Cangshan Cutlery Co.*, 767 F. Supp. 3d 384, 389 (W.D. Tex. 2025) (citing *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 450 (5th Cir. 2018)).  "For harassment to affect a term, condition, or privilege of employment, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Clark v. City of Alexandria, LA.*, 116 F.4th 472, 479 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1331 (2025).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Wantou*, 23 F.4th at 433 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

After setting aside any conclusory allegations—which the Court "do[es] not credit," *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016)—and any unexhausted allegations, *see supra* Part IV-A, Plaintiff has alleged that Sulicki, her first-line supervisor (1) reprimanded her for minor tardiness, (2) accused her of improperly handing off work to a colleague, (3) shared her HIPPA-protected medical information with a physician, (4) failed to intervene when one of her colleagues accused her of using false data; (5) instructed her colleagues not to answer her phone

11

calls on one occasion; (6) accused her of failing to collaborate and interact with her colleagues; (8) accused her of failing to obtain her VPN credentials for purposes of remote work; (9) refused to delay the start of a meeting so her union representative could be present; (10) accused her of ignoring instructions, and (11) encouraged a colleague to report her for misconduct following an altercation.  (Docket Entry 14, at 4–10.)  Plaintiff has also alleged that Butler, the Chief of Quality Management (a) told several black employees to keep their heads down and focus on their work; (b) accused Plaintiff of failing to provide a colleague with proper orientation; and (c) told Plaintiff that her transfer request had been denied because she did not sign a modified settlement agreement following mediation regarding her EEOC complaint.  (*Id.* at 4–14.)  Finally, Plaintiff alleges that some unspecified person denied one of her overtime requests.  (*Id.* at 5.)

It does not appear that the conduct alleged is sufficiently severe to have affected the terms of conditions of Plaintiff's employment from an objective standpoint.  *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment."); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) ("The legal standard for workplace harassment in this circuit is . . . high.").  But even if it were, it does not "plausibly support a finding of *racially* motivated harassment." *Marlbrough v. Cornerstone Chem. Co.*, No. CV 23-22, 2024 WL 1116177, at *6 (E.D. La. Mar. 14, 2024) (emphasis added); *see also Reine v. Honeywell Int'l, Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) ("Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed.").  As noted above, *see supra* note 3, the only allegations with a direct bearing on Plaintiff's racially-hostile-work-environment claim are too conclusory to be credited—*i.e.*, that Sulicki's "animosity to African American staff members was well known" and that Polk, Siderline, Sulicki, and Butler "made derogatory comments about

Blacks." (Docket Entry 14, at 3, 9.) Such "conclusory statement[s] [are] not . . . factual allegation[s] and do[ ] not support a plausible claim of race based harassment." *Marlbrough*, 2024 WL 1116177, at *6; *see Chhim*, 836 F.3d at 469 ("We take the well-pleaded factual allegations in the complaint as true, but we do not credit conclusory allegations.").

The one non-conclusory allegation with any potential bearing on race was that Butler told Plaintiff and other black employees that "[w]hen you get these jobs, you should keep your heads down and do your work and pray about it." (Docket Entry 14, at 4.) This single allegation seems too slender a reed upon which to premise reasonable inferences that the mistreatment Plaintiff alleges was racially charged.

Accordingly, because the well-pleaded factual allegations in Plaintiff's complaint provide an insufficient basis for the Court to reasonably infer that any harassment she suffered was based on her race, Plaintiff has failed to state a plausible discrimination claim based on a hostile work environment. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("As Raj has not alleged any connection between his race and . . . the harassment alleged in the complaint, he has not plead[ed] a claim of hostile work environment that rases his right to relief above the speculative level.") (citation and internal marks omitted). As such, that claim is subject to dismissal.

It is possible that, although Plaintiff's specific claims of racially hostile work environment in the First Amended Complaint are insufficient, she might have been able to allege more specific claims in an amended complaint; after all, in its decision the EEOC found "more than enough evidence to support a finding of discrimination based on race and reprisal," that Plaintiff "testified credibly about the hostile work environment and its effects," and that she was "maligned, criticized, and considered lazy," at least partly, "because of her race." (Docket Entry 17-10, at 26.) Considering the EEOC's findings, "it appears a more careful or detailed drafting might overcome

13

the deficiencies" in her racially-hostile-work-environment claim. *See Bauer v. AGCO Corporation*, 770 F. Supp. 3d 957, 962 (W.D. Tex. 2025).

The undersigned notes that providing Plaintiff with yet another opportunity to amend her complaint would be contrary to the District Court's Standing Order, which specifically advised Plaintiff that, after having been provided notice of proposed deficiencies in her pleading and the opportunity to amend it, she would "not be allowed an additional opportunity to amend" following a meritorious and properly filed 12(b)(6) motion. (Docket Entry 2, at 2 (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002), and *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002)). Nevertheless, in the unusual circumstances of the case, it appears that the interests of justice would be better served if the Court dismissed Plaintiff's racially-hostile-work-environment claim—but only that claim—*without* prejudice, permitting Plaintiff another opportunity to amend that claim with specific, non-conclusory allegations notwithstanding the default rule in the Court's Standing Order.

## V.    Conclusion and Recommendation.

Based on the foregoing, I recommend that Defendant's Motion to Dismiss (Docket Entry 15) be **GRANTED**, and that the discrimination, retaliation, and retaliatory-hostile-work-environment claims in Plaintiff's First Amended Complaint (Docket Entry 14) be **DISMISSED WITH PREJUDICE**. I recommend that Plaintiff's racially-hostile-work-environment claim be **DISMISSED WITHOUT PREJUDICE**, and that she be given one final opportunity to amend her complaint to include well-pleaded factual allegations that plausibly support such a claim.

## VI.    Notice of Right to Object.

The Clerk of the Court shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing

user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify the findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on February 24, 2026.

Henry J. Bemporad
United States Magistrate Judge

15